UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STANN C. GALLOWAY a/k/a STAN GALLOWAY and KELLY D. GALLOWAY a/k/a KELLY GALLOWAY,<br><br>Defendants. | CASE NO. 5:00 cv 42 SPM |

REAL ESTATE MORTGAGE FORECLOSURE COMPLAINT

The United States of America, plaintiff, by and through its undersigned Assistant United States Attorney, brings this action to foreclose a real estate mortgage, and says:

1.

This action is brought by the United States of America, as plaintiff, and jurisdiction of this Court is founded on Title 28, United States Code, Section 1345.

SPS

FILED

2.

According to the plaintiff's information and belief, the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, resides at 2213 Bryant Bay Road, Caryville, Florida 32427, within the jurisdiction of this Court.

3.

The defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, made, executed and delivered a promissory note on February 6, 1995 in the principal amount of $48,280.00, with interest accruing on the unpaid principal at the rate of 8.00% per annum, payable to the order of the United States of America, acting through Rural Development, formerly known as the Farmers Home Administration, United States Department of Agriculture. A copy of said promissory note is attached hereto and, by reference, made a part hereof as Exhibit "A".

4.

In order to secure payment of the aforesaid promissory note, the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, made, executed, and delivered to the United States of America, acting through Rural Development, formerly known as the Farmers Home Administration, United States Department of Agriculture, a real estate mortgage dated February 6, 1995

encumbering certain real property situated, lying and being in Washington County, Florida, as described therein. Said real estate mortgage was recorded on February 7, 1995 in Official Record Book 268, page 1274, Office of the Clerk of Circuit Court for Washington County, Florida. A copy of said real estate mortgage is attached hereto and, by reference, made a part hereof as Exhibit "B".

5.

The plaintiff and the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, entered into a subsidy repayment agreement on or about February 6, 1995, which provided for the recapture of interest credits granted to the defendants by the plaintiff upon, inter alia, foreclosure of the aforesaid real estate mortgage. A copy of said subsidy repayment agreement is attached hereto and, by reference, made a part hereof as Exhibit "C".

6.

Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway executed, acknowledged and delivered to RD a Corrected Real Estate Mortgage which was recorded on March 7, 1995, in Mortgage Book 268, Page 2139, in the Office of the Clerk of Washington County, Florida. A copy of the Corrected Mortgage is attached and marked Exhibit "D".

7.

The defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, are in default under the terms of the aforesaid promissory note and real estate mortgages by virtue of their failure to pay the monthly installment due in June 6, 1999 and all subsequent installments. By reason of said default, the plaintiff has elected and does hereby elect to declare the entire principal amount of said promissory note due and payable, to-wit:

> $47,734.28, plus interest thereon of $1,801.78 computed through December 22, 1999 and accruing thereafter at the rate of 8.00% per annum.

A Certificate of Indebtedness is attached hereto and, by reference, made a part hereof as Exhibit "E".

8.

Pursuant to Rule 9(c), Federal Rules of Civil Procedure, any and all loan servicing actions required by applicable statutes and regulations which may be conditions precedent to proceeding with this foreclosure have been performed or have occurred.

9.

The plaintiff's real estate mortgage is a lien upon the aforesaid real property, which is superior to any

right, title or interest of the defendants in and to said property.

10.

Fee simple title to the aforesaid real property is vested in the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway.

WHEREFORE, the plaintiff demands:

1. An accounting of what is due the plaintiff on account of the aforesaid promissory note and real estate mortgage.

2. An order requiring the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, to pay to the plaintiff within the time allowed by this Court all sums found to be so due, together with the costs and expenses of this suit.

3. That in default of such payments, the aforesaid real property be sold under the direction of this Court in bar and foreclosure of all right, title, interest and equity of redemption of the defendants, Stann C. Galloway a/k/a Stan Galloway and Kelly D. Galloway a/k/a Kelly Galloway, and all other persons claiming by, through, under or against them and that out of the proceeds of the sale the amounts due the plaintiff be paid insofar as they will suffice.

4. That the plaintiff be granted such other and further relief as the Court deems just and proper.

P. MICHAEL PATTERSON
United States Attorney
Northern District of Florida

By ______________________
MICHAEL P. FINNEY
Florida Bar No. 127084
Assistant United States Attorney
21 East Garden Street
Pensacola, Florida 32501-5603
(850) 444-4000

USDA-FmHA
Form FmHA 1940-16
(Rev. 4-91)

# PROMISSORY NOTE

| TYPE OF LOAN |
|---|
| RH |

| |
|---|
| STATE FLORIDA |
| COUNTY WASHINGTON |
| CASE NO. 09-67-595054434 |

Date FEBRUARY 6, 1995.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government") at its office in CHIPLEY, WASHINGTON COUNTY, FLORIDA,

THE PRINCIPAL SUM OF FORTY-EIGHT THOUSAND, TWO HUNDRED EIGHTY DOLLARS AND NO/100------ DOLLARS ($ 48,280.00), plus INTEREST on the UNPAID PRINCIPAL of EIGHT PERCENT ( 8 %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☒ I. Principal and Interest payments shall be deferred. The interest accrued to JUNE 6, 19 95 shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in 392 regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of such new Principal herein $ 48,754.31 and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II. Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the ______ of each ______ beginning on ______, 19___, through ______, 19___, Principal and later accrued Interest shall be paid in ______ installments as indicated in the box below;

☐ III. Payments shall not be deferred. Principal and Interest shall be paid in ______ installments as indicated in the box below:

---

$ 352.00 on JULY 6, 19 95, and
$ 352.00 thereafter on the 6th of each MONTH until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and **PAYABLE** THIRTY-THREE ( 33 ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

---

EXHIBIT A

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017.

Presentment, protest, and notice are hereby waived.

Stann C. Galloway, (BORROWER) (SEAL)

Kelly D. Galloway (CO-BORROWER) (SEAL)

RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ 280.00 | 2-6-95 | (8) $ | | (15) $ | |
| (2) $ 3,456.00 | 2-10-95 | (9) $ | | (16) $ | |
| (3) $ 9,504.00 | 4-3-95 | (10) $ | | (17) $ | |
| (4) $35,040.00 | 5-5-95 | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

USDA-FmHA
Form FmHA 1927-1 FL
(Rev. 8-94)

*Position 5*
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, Washington, D.C., and the material in the blank spaces in the form was inserted by or under the direction of
Mary Sue McCall, an officer of
Washington County Abstract
(Name)
P. O. Box 645 Chipley, FL 32428
(Address)

OFF. REC. 0268 PAGE 1274

# REAL ESTATE MORTGAGE FOR FLORIDA

THIS MORTGAGE is made and entered into by STANN C. GALLOWAY, a/k/a Stan Galloway, and wife, KELLY D. GALLOWAY, a/k/a Kelly Galloway

residing in Washington County, Florida, whose post office address

is P. O. Box 743 Vernon, Florida 32462
the mortgagor(s), herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, the mortgagee, whose principal office is located in Washington, D.C.; herein called the "Government," and:

WHEREAS Borrower is justly indebted to the Government as evidenced by one or more certain promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| February 6, 1995 | $48,280.00 | 8% | February 6, 2028 |

OFFICIAL RECORDS WASHINGTON CO, FL
EARNESTINE MILLER, CLERK
95000621 FILED: 02/07/95
BOOK: 0268 PAGE: 1274 AT 11:29 AM

The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to the Government against loss under its insurance contract by reason of any default by Borrower;

EXHIBIT B

And this instrument also secures future advances made within twenty (20) years from date hereof to anyone herein called Borrower when evidenced by a note or notes covering loans made or insured under Subtitle A of the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration provided the total principal indebtedness of the original and future loans shall not exceed $48,280.00, subject to the same terms and condition regarding the assignment of said notes hereinabove provided and all references in this instrument to the "note" shall be deemed to include future notes.

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, and hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, assign and forever warrant unto the Government the following property situated in the

State of Florida, County(ies) of Washington

The North 3.0 acres +/- of the E 1/2 of the NE 1/4 of NE 1/4 of NW 1/4 of Section 17, Township 3 North, Range 15 West, Washington County, Florida

together with all rights (including the right to mining products, gravel, oil, gas, coal, or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issue, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stocks pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnity and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe;[redacted] or cause or permit waste, lessening or impairment of the security covered hereby or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to cost of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property .

[redacted]

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenant and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

[redacted]

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in such cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time as provided for in 28 U.S.C. 2415 (a) within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) Borrower will at all times properly fertilize, cultivate, care for, and maintain in a productive condition all the grove and orchard trees now on the property or hereafter planted thereon, and will protect the groves and orchards against loss or damage by fire by making and maintaining proper firebreaks on and around the property, to the satisfaction of the Government, and in the event borrower fails so to do, the Government is hereby authorized and empowered to enter in and upon the premises and to fertilize, cultivate, care for, and place in a productive condition the groves and orchards and make and maintain firebreaks on and around the same and the cost and expense thereof shall be paid by Borrower immediately upon presentation of an itemized statement thereof and if not so paid same may be paid by the Government, in accordance with and subject to the provisions of this mortgage; and Borrower will not top-work the grove or orchard trees without first obtaining the written consent of the Government.

(23) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Gainesville, Florida 32614-7010, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this 6th day of February, 1995.

[signature] (SEAL)
Stann C. Galloway

[signature] (SEAL)
Kelly D. Galloway

[signature]
witness: Mary Sue McCall

[signature]
witness: Sandra K. Hammond

ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF WASHINGTON

The foregoing instrument was acknowledged before me this 6th day of February 1995 by Stann C. Galloway, a/k/a Stan Galloway and wife, Kelly D. Galloway/ ~~a/k/a Kelly Galloway~~, who is (are) personally known to me or who has (have) produced drivers license as identification and who did (did not) take an oath.

[signature]
NOTARY SIGNATURE

NOTARY SEAL OR NOTARY STAMP

MARY SUE MCCALL
MY COMMISSION # CC 165449
EXPIRES: December 15, 1995
Bonded Thru Notary Public Underwriters

Mary Sue McCall
NOTARY NAME TYPED, PRINTED OR STAMPED
COMMISSION EXPIRES: 12-15-95
SERIAL NUMBER, IF ANY: CC#165449

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note 2-6-95 Amount of Note $48,280.00 Date of mortgage 2-6-95

Date of Note ______ Amount of Note ________ Date of mortgage __________

Type of Assistance: RH
1. Interest Credit X
2. Homeownership Assistance Program _____

Address of Property: Rt. 1 (Sec. 17, T3N, R15W)

Caryville, Florida 32427

BORROWER: STANN C. GALLOWAY

CO-BORROWER: KELLY D. GALLOWAY

1. This agreement entered into pursuant to 7 CFR 1951-I, between the United States of America, acting through the Farmers Home Administration (FmHA) (herein called "the Government") pursuant to section 521 of Title V of the Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears above (herein sometimes referred to as "borrower"), supplements the note(s) from borrower to the Government as described above, and any promissory note(s) for loans made to borrower in the future by the Government. Such future notes, when executed, will be listed below the signature line of this Subsidy Repayment Agreement.

2. I (we) agree to the conditions set forth in this agreement for the repayment of the subsidy granted me (us) in the form of interest credits or Homeownership Assistance Program (HOAP) subsidy (hereinafter called "subsidy").

3. I(we) agree that the real property described in the mortgage(s) listed above is pledged as security for repayment of the subsidy received or to be received. I(we) agree that the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us). I (we) understand that the real estate securing the loan(s) is the only security for the subsidy received. I (we) further understand that I (we) will not be required to repay any of the subsidy from other than the value (as determined by the Government) of the real estate, mortgaged by myself (ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.



EXHIBIT C

4. I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us). If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loans(s) will not be released of record until the total amount owed the Government has been repaid.

5. I (we) agree that Paragraph 6 of this agreement is null and void should the property described in the mortgage(s) be voluntarily conveyed to the Government or liquidated by foreclosure.

6. When the debt is satisfied by other than voluntary conveyance of the property to the Government or by foreclosure, I (we) agree that sale proceeds will be divided between the Government and me (us) in the following order:

(a) Unpaid balance of loans secured by a prior mortgage as well as real estate taxes and assessments levied against the property which are due will be paid.

(b) Unpaid principal and interest owed on FmHA RH loans for the property and advances made by FmHA which were not subsidy and are still due and payable will be paid to the Government.

(c) I (we) will receive from the sale proceeds actual expenses incurred by me (us) necessary to sell the property. These may include sales commissions or advertising cost, appraisal fees legal, and related costs such as deed preparation and transfer taxes.

Expenses incurred by me (us) in preparing the property for sale are not allowed unless authorized by the Government prior to incurring such expenses. Such expenses will be authorized only when FmHA determines such expenses are necessary to sell the property or will likely result in a return greater than the expense being incurred.

(d) I (we) will receive the amount of principal paid off on the loan calculated at the promissory note interest rate.

(e) Any principal reduction attributed to subsidized interest calculations will be paid to the Government.

(f) I (we) will receive my original equity which is the difference between the market value of the security, as determined by the FmHA appraisal at the time the first loan subject to recapture of subsidy was made, and the amount of the FmHA loan(s) and any prior lien. This amount is $3,720.00 and represents .07 percent of the market value of the security. (The

percent is determined by dividing my (our) original equity by the market value of the security when the loan was closed.) The dollar amounts and percent will be entered at the time this agreement is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f) above have been paid is called value appreciation. The amount of value appreciation to be paid to the Government, in repayment or the subsidy granted, is the lesser of (1) the full amount of the subsidy or (2) an amount determined by multiplying the value appreciation by the appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the amount paid the Government as determined in (g) above. I(we) will also receive an additional amount in proportion to my original equity by reducing the amount of value appreciation due to the Government by the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation to be recaptured will be calculated as if I (we) had paid one (1) percent interest on the loan, unless the average interest rate paid by me (us) was greater than 1 percent. In such cases it will be determined based on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount of repayment determined in (g) above will be reduced by the following percent: ________. This percent will be determined by dividing the amount of the loan(s) subject to recapture by the total outstanding RH debt. This percentage will be entered at the time I(we) sign this agreement.

(k) If this agreement is for more than one loan that is subject to recapture, the subsidy repayment computations will be based on the total subsidy granted on all loans.

7. When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price. In such cases, the subsidy due the Government will remain a lien on the property until paid. It must be paid upon non occupancy, sale, or transfer of title to the property.

8. I (we) have read and agree to the provisions of this agreement.

Stann C. Galloway ________ Borrower
STANN C. GALLOWAY

Kelly D. Galloway ________ Co-Borrower
KELLY D. GALLOWAY

February 6th, 1995
Date Signed

Accepted and Agreed to

BY Darren L. Gavin ________ (FmHA Official)

DARREN L. GAVIN
County Supervisor ________ (Title)

2/21/95
Date

USDA-FmHA
Form FmHA 1927-1 FL
(Rev. 8-94)

*Position 5*

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, Washington, D.C., and the material in the blank spaces in the form was inserted by or under the direction of
Mary Sue McCall, an officer of
Washington County Abstract
(Name)
P. O. Box 645 Chipley, FL 32428
(Address)

OFF. REC 0268 PAGE 2139

CORRECTIVE

# REAL ESTATE MORTGAGE FOR FLORIDA

THIS MORTGAGE is made and entered into by STANN C. GALLOWAY, a/k/a Stan Galloway and wife, KELLY D. GALLOWAY, a/k/a Kelly Galloway

residing in Washington County, Florida, whose post office address is P. O. Box 743 Vernon, Florida 32462 the mortgagor(s), herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, the mortgagee, whose principal office is located in Washington, D.C.; herein called the "Government," and:

WHEREAS Borrower is justly indebted to the Government as evidenced by one or more certain promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| February 6, 1995 | $48,280.00 | 8% | February 6, 2028 |

OFFICIAL RECORDS WASHINGTON CO, FL
EARNESTINE MILLER, CLERK
950001105 FILED: 03/07/95
BOOK: 0268 PAGE: 2139 AT 09:09 AM

The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to the Government against loss under its insurance contract by reason of any default by Borrower;

EXHIBIT D

And this instrument also secures future advances made within twenty (20) years from date hereof to anyone herein called Borrower when evidenced by a note or notes covering loans made or insured under Subtitle A of the Consolidated Farm and Rural Development Act or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration provided the total principal indebtedness of the original and future loans shall not exceed $ 48,280.00, subject to the same terms and condition regarding the assignment of said notes hereinabove provided and all references in this instrument to the "note" shall be deemed to include future notes.

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any shared Appreciation/ Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, and hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, bargain, sell, convey, mortgage, assign and forever warrant unto the Government the following property situated in the

State of Florida, County(ies) of Washington

The North 3.0 acres +/- of the E 1/2 of the NE 1/4 of NE 1/4 of NW 1/4 of Section 17, Township 3 North, Range 15 West, Washington County, Florida.

THIS IS A CORRECTIVE MORTGAGE TO CORRECT MORTGAGE FILED IN OFFICIAL RECORDS BOOK 268, PAGE 1274.

together with all rights (including the right to mining products, gravel, oil, gas, coal, or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issue, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stocks pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnity and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to cost of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property .

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as beneficiary hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenant and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from Farm Credit Service, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in such cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time as provided for in 28 U.S.C. 2415 (a) within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) Borrower will at all times properly fertilize, cultivate, care for, and maintain in a productive condition all the grove and orchard trees now on the property or hereafter planted thereon, and will protect the groves and orchards against loss or damage by fire by making and maintaining proper firebreaks on and around the property, to the satisfaction of the Government, and in the event borrower fails so to do, the Government is hereby authorized and empowered to enter in and upon the premises and to fertilize, cultivate, care for, and place in a productive condition the groves and orchards and make and maintain firebreaks on and around the same and the cost and expense thereof shall be paid by Borrower immediately upon presentation of an itemized statement thereof and if not so paid same may be paid by the Government, in accordance with and subject to the provisions of this mortgage; and Borrower will not top-work the grove or orchard trees without first obtaining the written consent of the Government.

(23) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Gainesville, Florida 32614-7010, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ____________ day of February, 19 95.

Mary Sue McCall
witness: Mary Sue McCall

Sandra K. Hammond
witness: Sandra K. Hammond

Stann C. Galloway (SEAL)
Stann C. Galloway

Kelly D. Galloway (SEAL)
Kelly D. Galloway

ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF WASHINGTON

The foregoing instrument was acknowledged before me this ____ day of February, 1995 by Stann C. Galloway, a/k/a Stan Galloway, and wife, Kelly D. Galloway, a/k/a Kelly Galloway, who is (are) personally known to me or who has (have) produced Driver's License as identification and who did (did not) take an oath.

Sandra K. Hammond
NOTARY SIGNATURE

SANDRA K. HAMMOND
NOTARY NAME TYPED, PRINTED OR STAMPED

COMMISSION EXPIRES: 10-16-95

SERIAL NUMBER, IF ANY: CC#142825

NOTARY SEAL
OR NOTARY STAMP

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL DEVELOPMENT**

**CERTIFICATE OF INDEBTEDNESS**

**SUBJECT: STANN C. GALLOWAY AND KELLY D. GALLOWAY**

**ACCOUNT NUMBER: 2181311**

**EFFECTIVE DATE: 12/22/99**

I certify that United States Department of Agriculture, Rural Development, f/k/a Farmers Home Administration records show that subject debtor(s) is/are indebted to the United States of America in the amount stated on the attached Payoff Funds Detail Panel. This indebtedness is owed by virtue of a Promissory Note or Assumption Agreement executed by the debtor(s) and secured by a Real Estate Mortgage.

The date of default is: 06/06/99

Rural Development has complied with 7 CFR 3550.

After acceleration notice was sent, the borrower(s) did not request a formal or informal meeting with the Agency regarding acceleration of the debt and institution of foreclosure proceedings.

CERTIFICATION: Pursuant to 28 U.S.C. Section 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on: December 22, 1999

Darren L. Gavin

DARREN L. GAVIN
Community Development Manager
United States Department of Agriculture

EXHIBIT E

TV420586

ANN C. GALLOWAY & KELLY D. GALLOWAY

MORE: < >

## FUNDS DETAIL PANEL

| -- FUNDS DUE FOR ACCOUNT 2181311 -- | |
|---|---|
| PRINCIPAL | 47734.28 |
| INT 08/06/99 TO 12/22/99 | 1801.78 |
| MAXIMUM SUBSIDY RECAPTURE | 0.00 |
| ESCROW/IMPOUND REQUIRED | 0.00 |
| FHA PREMIUM DUE HUD | 0.00 |
| OPTIONAL INSURANCE | 0.00 |
| LATE CHARGES DUE | 0.00 |
| FEES ASSESSED W/PAYOFF QUOTE | 0.00 |
| FEES REQUIRED W/PAYOFF FUNDS | 0.00 |
| FEES CURRENTLY ASSESSED | 0.00 |
| ------ FUNDS TO BE CREDITED ------ | |
| LESS ESCROW/IMPOUND FUNDS | 0.00 |
| LESS UNAPPLIED FUNDS | 0.00 |
| PAYOFF FUNDS REQUIRED | 49536.06 |
| ------ FUNDS RETAINED ------ | |
| ESCROW/IMPOUND FUNDS | 0.00 |
| UNAPPLIED FUNDS | 0.00 |

----- ESCROW/IMPOUND REQUIRED -----

------ INTEREST CALCULATIONS ------

| RATE | FROM | TO | INT DUE |
|---|---|---|---|
| 8.000 | 08/06/99 | 12/22/99 | 1443.80 |
| UNCOLLECTED INTEREST | | | 357.98 |

AFTER 12/22/99 ADD 10.4623 FOR INTEREST PER DAY

QUOTE EXPIRES 12/21/99

{PF3} TO EXIT OK